UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERKEER CHANCE, DESRION DURANT, and DAVON MARSHALL,<br><br>             Plaintiffs,<br><br>  -against-<br><br>THE CITY OF NEW YORK, POLICE OFFICER LUIS MARTINEZ, POLICE OFFICERS JOHN DOES 1-5. | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>11-CV-02067 (RJH) (THK) |

**PRELIMINARY STATEMENT**

  1.  This is a civil rights action alleging that the City of New York and several New York City Police Officers violated Plaintiffs' rights under 42 U.S.C. §1983, the Fourth and Six Amendments to the United States Constitution and Article I, Section 12 of the New York State Constitution and of common law of the State of New York.  Specifically, Plaintiffs allege that, on January 7, 2011, defendants falsely arrested them, assaulted and battered them, and made false allegations to the Kings County District Attorney's Office.  Plaintiffs seek compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

**JURISDICTION**

  2.  This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988, Article 1 of the New York Constitution, and

New York common law.  Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his state law claim of malicious prosecution.  With respect to this state law claim on behalf of Plaintiff, a notice of claim was duly filed on the City of New York within 90 days of the dismissal of the criminal charges filed against plaintiff, more than 30 days have elapsed since such filing, and the City has refused to settle plaintiff's state law claims.  Moreover, this action was filed within one year and 90 days of the incident that is the basis of this case.

      3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4).  Moreover, venue is proper pursuant to 28 U.S.C. § 1391(b) because the City of New York's deliberate indifference to plaintiff's rights under federal and state law took place in this district, specifically at NYPD Headquarters located at One Police Plaza, and at the office of the Civilian Complaint Review Board located at 40 Rector Street.

**VENUE**

      4.      Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c) because defendant City of New York is subject to personal jurisdiction in the Southern District of New York.

**JURY DEMAND**

      5.      Plaintiffs demand a trial by jury on each and every one of their claims as pled herein.

**PARTIES**

      6.      Plaintiffs Sherkeer Chance ("Sherkeer"), Desrion Durant ("Desrion"), and Davon Marshall ("Davon") are citizens of the United States and residents of Kings County.

      7.      Defendant City of New York (the "City") is a municipal corporation within the

State of New York.

8.  The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9.  Police Officer Luis Martinez is a member of the New York City Police Department who was involved in the arrest of plaintiffs and the torts arising out of plaintiffs' arrests on January 7, 2011. Martinez is liable for directly participating in the acts described herein and for failing to intervene to protect plaintiffs from the illegal conduct of his fellow officers. Martinez is sued in his individual and official capacity.

10. Police Officers John Does are member of the NYPD who were involved in the arrest of plaintiffs and the torts arising out of plaintiffs' arrests on January 7, 2011. Does are liable for directly participating in the acts described herein and for failing to intervene to protect plaintiffs from the illegal conduct of fellow officers. Does are sued in their individual and official capacities.

11. At all times relevant herein, defendants Martinez and John Does were each acting under color of state law in the course and scope of his or her duties and functions as an agent,

servant, employee and officer of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants Martinez and John Does were acting for and on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employees of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

## STATEMENT OF FACTS

12. On January 7, 2011 at approximately 9:00 p.m., plaintiffs were lawfully visiting their friend, Travis Bourne, who lived on the first floor at 1144 Bergen Street in Brooklyn, New York.

13. As Plaintiffs were exiting the building, police officers approached and instructed the group to remain inside.  An officer grabbed Sherkeer's jacket, shoved him, and pushed Sherkeer against a wall.  The officer ordered Sherkeer to lay on the floor and placed him in extremely tight handcuffs.

14. Desrion attempted to record the incident until an officer knocked the phone camera out of Desrion's hand.  The officers placed Desrion in extremely tight handcuffs and roughly pushed Desrion as he descended a staircase.  The officers denied Desrion's request to loosen his handcuffs.

15. The officers then placed Davon in extremely tight handcuffs.

16. Throughout the entire incident, resident Travis Bourne repeatedly told the officers that Plaintiffs were his guests.

17. Plaintiffs were taken to the precinct to be processed and later transported to

Brooklyn Central Booking to be arraigned.

18. While Plaintiffs were in Central Booking, one or more of the arresting officers met with a prosecutor employed by the Kings County District Attorney's Office.

19. The Defendant officers misrepresented to the prosecutor that Plaintiffs had committed crimes in a building operated by the New York City Housing Authority ("NYCHA").

20. On January 8, 2011, Davon and Desrion were arraigned and each received an ACD.

21. On January 9, 2011, Sherkeer was arraigned and received an ACD.

22. As a result of their unjustified arrests, plaintiffs suffered, *inter alia*, deprivation of liberty, emotional distress, mental anguish, fear, anxiety, embarrassment and the violation of their Constitutional rights.

## CAUSES OF ACTION

### FIRST CLAIM (FALSE ARREST)

23. Plaintiffs repeat the foregoing allegations.

24. No officer observed Plaintiffs commit a crime on January 7, 2011.

25. At no time on January 7, 2011 did Plaintiffs commit a crime.

26. Accordingly, Defendants violated the Fourth Amendment and state law because they arrested Plaintiffs without probable cause.

### SECOND CLAIM (FABRICATION OF EVIDENCE)

27. Plaintiffs repeat the foregoing allegations.

28. Defendants, pursuant to a conspiracy, falsely stated to the Kings County District Attorney's Office that Plaintiffs had committed a crime.

29. Accordingly, Defendants violated the Sixth Amendment by fabricating evidence against Plaintiffs and denying them a fair hearing and trial.

### THIRD CLAIM (PLAINTIFF'S STATE LAW CLAIMS AGAINST THE INDIVIDUAL OFFICERS)

30. Plaintiffs repeat the foregoing allegations.

31. The conduct of the defendant Police Officers, as described herein, amounted to false arrest, excessive force, malicious prosecution, assault, battery, negligence and fabricated evidence in violation of the laws of the State of New York.

### FOURTH CLAIM (MONELL CLAIM)

32. Plaintiffs repeat the foregoing allegations.

33. The City of New York directly caused the constitutional violations suffered by plaintiffs.

34. Upon information and belief, the City of New York, at all relevant times herein, was aware from notices of claim, lawsuits, complaints filed with the City, and from the City's own observations, that many of its police officers, including the individual defendants, are unfit officers who have the propensity to commit the acts alleged herein. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and

utilized them.  Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the officers.

35. Moreover, the City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

36. The NYPD first implemented vertical patrols in 1991.  The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences.  It is considered an "important component of the [NYPD]'s drug control strategy."  (NYPD Patrol Guide Procedure 212-59).

37. In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building to affirmatively establish a connection to a specific building resident.  If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to a specific resident or his or her own home, he or she is arrested for trespass.  If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

38. The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, and even search individuals in the common areas of NYCHA residences in the absence of individualized objective facts.

39. In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years. *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau*, New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24. These figures underestimate the actual number of vertical patrols, however, since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

40. In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

41. Trespassing in public housing is a Class B misdemeanor under subsection (e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the vertical patrol program (L. 1992 ch. 434).

42. The number of trespass arrests in NYCHA residences has surged. The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

43. The NYPD Patrol Guide on vertical patrol provides NYPD officers no guidance on who is to be stopped, seized, questioned, searched or arrested for trespass. It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and roof landings and take appropriate police action when necessary." (NYPD Patrol Guide 212-60). Yet the vertical patrol provision contains no criteria for determining who is - and who is not - an "unauthorized person."

44. The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliably

differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit or a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliable differentiate between a suspected trespasser and a building resident, visitor, permittee, or licensee based on this policy.

45. Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, search, and arrest for trespass results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

46. The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

47. Under this policy, as written, people are or can be arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest. This is even true if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

48. Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

49. In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves. According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements." Testimony of Insp. Michael C. Phipps, New York City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony). Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their buildings. *Id.*

50. In fact, NYCHA leases do not contain any such clause. A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord. For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

51. Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area. There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building. Indeed, there

could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

52. Loitering also requires a specified unlawful purpose for being present at a location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual conduct, P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36; or engaging in prostitution, P.L. section 240.37.

53. Thus, there is no legal basis for wholesale stopping. seizing, questioning, searching and arresting individuals for mere presence in lobbies, roofs, hallways, and stairwells in and around NYCHA residences. Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

54. The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass. On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass. Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause.

55. The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

56. The aforesaid conduct by the City of New York violated plaintiffs' rights under 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

1. Compensatory damages in an amount to be determined by a jury;

2. Punitive damages in an amount to be determined by a jury;

3. Costs, interest and attorney's fees;

4. Such other and further relief as the Court may deem just and proper.

DATED:   March 23, 2011
         New York, New York

                                    _____
                                    ROBERT MARINELLI
                                    Attorney at Law
                                    305 Broadway, 14th Floor
                                    New York, New York 10007
                                    (212) 822-1427

Case 1:11-cv-02067-RJH   Document 1   Filed 03/24/11   Page 13 of 13